FRANK S. SHEARMAN and MARGARET J. SHEARMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shearman v. Commissioner
Docket No. 867-80.
United States Tax Court
T.C. Memo 1981-479; 1981 Tax Ct. Memo LEXIS 265; 42 T.C.M. (CCH) 950; T.C.M. (RIA) 81479; September 1, 1981. *265 Carl I. Klekers, for the petitioners. Robert L. Archambault, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1975, 1976 and 1977 in the amounts of $ 1,359.19, $ 938 and $ 1,030, respectively, and additions to tax under section 6653(a) [1] for these years in the respective amounts of $ 67.96, $ 46.90 and $ 51.50. The issue for decision is whether petitioners are entitled to deduct the cost of travel by Frank S. Shearman between his residence in Omaha, Nebraska, and his place of employment at Brownsville, Nebraska, during the calendar year 1975 and part of the year 1976, and the cost incurred in travel between his residence and place of employment at Nebraska City, Nebraska, for part of the calendar year 1976 and all of the calendar year 1977. [2]
*266 FINDINGS OF FACT Petitioners, husband and wife, who resided in Omaha, Nebraska at the time of the filing of their petition in this case, filed a joint Federal income tax return for each of the calendar years 1975, 1976 and 1977 with the Internal Revenue Service Center, Ogden, Utah. Frank S. Shearman (petitioner) is a steamfitter. He started in this work in 1954 at Allied Chemical Company. At the time of the trial, petitioner and his wife and children were living at an address in Omaha, Nebraska, where they had been living for approximately 20 years. Petitioner has always obtained his steamfitter jobs through the Omaha union hall. In approximately August of 1970, petitioner obtained a job working as a steamfitter on a nuclear power plant at Brownsville, Nebraska for Jelco, Incorporated (Jelco). Petitioner continued to work as a steamfitter for Jelco from August 1970 to April 16, 1976, at the construction site of the nuclear power plant at Brownsville, Nebraska. On April 16, 1976, petitioner's employment in Brownsville was terminated because of lack of work. From the time of his employment by Jelco at Brownsville until his work there terminated petitioner was a general foreman *267 on the construction job. However, petitioner was paid at an hourly rate. In addition to his hourly pay, petitioner, in accordance with the union contract with Jelco, received travel pay at a rate of $ 12 per day for each day he worked at the Brownsville plant. This travel pay received by petitioner totaled $ 2,856 in 1975 and $ 960 in 1976. Petitioner included these amounts in the income reported on his Federal income tax returns for 1975 and 1976. During the entire time petitioner was employed at Brownsville, he and his family continued to live at their home in Omaha and petitioner drove each day from his residence to the job site at Brownsville and back. The round trip driven by petitioner each day was approximately 160 miles. After petitioner's job at Brownsville with Jelco was terminated, petitioner through assignment from the union hall worked in the metropolitan Omaha, Nebraska, area as a steamfitter for three different employers from April 1976 until early August 1976. During the last week in August, petitioner obtained a job through the union hall working for Wallace Power Company (Wallace) at the construction site of a coal power plant project at Nebraska City, Nebraska. *268 At the time petitioner commenced working at Nebraska City the steamfitters' work on the power plant had just begun and petitioner was one of the first steamfitters hired to work at that plant. At the time petitioner commenced his employment at Nebraska City he was a job steward representing his union. At the commencement of petitioner's employment at the Nebraska City construction site he was a journeyman steamfitter and received a wage of $ 10.94 per hour in accordance with the union contract, and in addition received a travel allowance of $ 8 per day. The total travel allowance received by petitioner while employed by Wallace in 1976 was $ 632. Petitioner included all but $ 32 of this amount in the income reported on his 1976 return. On October 19, 1976, petitioner became a foreman on the Nebraska City construction project for Wallace and as a result his pay was increased by 10 percent to $ 12.03 an hour. Petitioner continued to work for Wallace at the Nebraska City construction site from the time of his employment in late August 1976 until May 17, 1977, with the exception of a short period in late January 1977 when, pursuant to the request of the union, he was permitted to *269 work on a special project involving setting of certain tanks. These tanks were being placed in the power plant by Midwest Steel Erection, Inc. (Midwest) and the setting of these tanks required a qualified steamfitter. Midwest did not have such a steamfitter and, through arrangements with the union and Wallace, petitioner worked from January 25, 1977, to February 3, 1977, on this special job and then returned to his work with Wallace. While employed at Midwest, petitioner received the journeyman-foreman's wage rate of $ 12.36 per hour and $ 8 per day travel allowance. Petitioner's employment with Wallace was terminated on his own volition and the next week he commenced employment with Foster Wheeler Energy Corporation (Foster), working on the same power plant in Nebraska City. Petitioner was selected for the job with Foster because of his qualification to do the skilled work required by the contract Foster had. Petitioner's pay rate when he commenced employment with Foster was $ 14.39 per hour compared to the pay rate of $ 12.93 per hour he was receiving from Wallace when he left. Petitioner, in addition to his hourly wages from Foster, also received $ 8 per day travel allowance *270 in 1977. The total travel allowance received by petitioner in 1977 was $ 2,144. On his 1977 tax return petitioner included the travel allowance received from Wallace in his reported income, but did not include the $ 1,368 received from Foster and Midwest in his reported income. Shortly after beginning his work with Foster, petitioner was again requested to work on a special project for Midwest and again, by agreement with his employer and the union, petitioner was permitted to do this work and return to his job with Foster. Petitioner worked for approximately one week in the latter part of May and the early part of June on the special project for Midwest and immediately thereafter resumed his work with Foster. Petitioner continued to work as a steamfitter for Foster at the Nebraska City power plant construction project until April 1979. On each work day while he was employed at Nebraska City during the years 1976 and 1977, petitioner drove from his residence in Omaha to the job site in Nebraska City and back, a distance of around 130 miles. On his Federal income tax return for 1975, petitioner claimed a deduction of $ 4,558 as employee business expense for the cost of his *271 travel between his residence and the Brownsville job site based on 38,080 miles driven. On his 1976 income tax return, petitioner claimed an automobile expense deduction of $ 3,612 as a business expense. This deduction was based on a mileage rate applied to 28,620 miles which petitioner traveled between his residence and the job site at Brownsville and his residence and the job site at Nebraska City. Petitioner did not reduce the deduction claimed by the $ 32 of travel allowance which he had not included in his reported income for 1976. On his 1977 income tax return, petitioner claimed $ 3,930 as employee business expense for driving between his residence and the Nebraska City job site. This deduction was based on a mileage rate applied to 28,000 miles traveled during 1977. In the computation of the claimed deduction petitioner did not reduce the cost he computed for travel by the $ 1,368 of travel allowance which he had not included in his income as reported for 1977. Respondent in his notice of deficiency to petitioner increased his income in each of the years here in issue by the amount of the travel expense deduction claimed by petitioner, with the explanation that Brownsville, *272 Nebraska, constituted petitioner's home for tax purposes while he was working on the nuclear power plant in that location, and Nebraska City constituted his home for tax purposes while he was working at the power plant job site in Nebraska City. [3]
OPINION On brief, respondent specifically concedes that if we determine that petitioner's employments at Brownsville and Nebraska City were temporary rather than indefinite or indeterminate, petitioner is entitled to deduct the amount he claimed as travel *273 expense reduced by the amount of the travel allowance he received in 1976 and 1977 which was not included by him in his reported taxable income. [4]
Petitioner offered no evidence whatsoever as to the length of time he expected the work he undertook for Jelco on the nuclear power plant at Brownsville to last, either at the time he commenced his work in 1970 or at the time he was continuing to work at this project during 1975 and 1976. Likewise, petitioner offered no evidence as to the length of time he anticipated that his work on the power plant at Nebraska City would continue, *274 either when he commenced employment there in late August of 1976 or while he was working there during 1976 and 1977. Neither did petitioner offer any evidence as to the length of time it might reasonable be anticipated that steamfitters would be needed on these projects. Petitioner's position is based entirely on the proposition that these jobs were assigned to him out of the union hall in Omaha, that he had no choice but to take these jobs or go unemployed because of lack of work in the Omaha area and that by the very nature of the projects they would end at some fixed and reasonable time which petitioner argued should be considered to be of "short duration." On this basis petitioner contends that his work at Brownsville and Nebraska City should be considered to be temporary. Petitioner, upon questioning, specifically stated that at the time he took the job with Jelco and the jobs at Nebraska City he was given no indication of how long they might last, and that he had no idea of how long they might last. Upon further questioning as to his own judgment of how long the job at Brownsville and the ones at Nebraska City would last, he stated that changes were always being made in *275 the requirements for the projects and "When you'd just about finished they'd add a change, a new safety device or something, and that would take considerable more work, but you had no idea. You couldn't plan anything on it. You really didn't know how long you were going to be there." In effect, petitioner is asking us to hold that because his employment was indefinite we should consider it to be temporary. Petitioner confuses "indefinite" and "permanent." As we pointed out in -- Even if it is known that a particular job may or will terminate at some future date, that job is not temporary if it is expected to last for a substantial or indefinite period of time. , affg. ; , affd. ; , affd. . * * * The evidence which is available in this record clearly indicates that petitioner's employment, both at Brownsville and Nebraska City, *276 was indefinite or indeterminate rather than temporary. His employment at Brownsville on the nuclear power plant actually lasted for approximately 6 years, and his employment on the power plant in Nebraska City actually lasted over 2-1/2 years. Furthermore, there is no showing in the record of the reasons for petitioner's termination of his employment in Nebraska City in 1979 so that, as far as this record shows, it may not have been because of the termination of the type of work petitioner was doing at Nebraska City. Petitioner's position is tantamount to a contention that since any construction project terminates at some time when the project is completed, all work on a construction project should be considered temporary. This contention is contrary to the definition of temporary used by this Court and other courts. Temporary employment has been held to be the type of employment that can be expected to last only for a short period of time at the time of its acceptance. . In , affd. per curiam , the Court held *277 that where the record does not show when construction on a plant began or when it was completed, the construction worker's work has not been shown to be temporary as distinguished from indefinite, even though work in the construction industry by its very nature has a degree of impermanence. The Court in the Peurifoy case pointed out that a construction worker's employment for each job lasts no longer than the need for his particular skill at the project. The Court stated that employment at certain larger projects may last for several years, although other projects may be of a shorter duration, but concluded that this recognized fact did not relieve the taxpayer from showing that his employment at some specific project was not of indefinite duration. In , we found the Peurifoy case to be indistinguishable from the facts there present. The McCallister case involved the contention of an electrician working on the construction of a power plant in Chester, Ohio, that his employment was temporary. In that case, as here, the taxpayer did not know the expected duration of his job at the time he accepted employment at the *278 power plant. The instant case is likewise indistinguishable from Peurifoy as well as McCallister. The burden is on petitioner to show that his employment in a specific job is temporary rather than indefinite and this petitioner has failed to do, either with respect to his work at Brownsville or his work at Nebraska City. Decision will be entered for the respondent. Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. ↩
2. Petitioner did not allege error in the determination of the addition to tax under section 6653(a) for any of the years here in issue apart from his contention that he owed no additional tax. In his brief, he made no argument with respect to these additions to tax. We have therefore concluded that petitioner does not contest this determination if we hold that there is a deficiency in tax for each of the years here in issue.↩
3. Respondent did not increase petitioner's reported income by the $ 32 of travel allowance not included therein in 1976 and the $ 1,368 not included therein or deducted from claimed travel expenses in 1977. Although the facts of this travel allowance not being reported as income developed at the trial, respondent has not amended his pleadings to request the determination of any increased deficiency. However, he does argue on brief that if we determine that petitioner is entitled to any deduction for travel between his residence in Omaha and the job sites at which he was employed, the amount determined should be reduced by the unreported amount of travel allowance he received.↩
4. Obviously, since petitioner commuted back and forth each day, there could be the question in this case of whether petitioner would be entitled to the deduction for any travel expenses even if his work at Brownsville and Nebraska City was temporary. See , vacated and remanded on respondent's motion by an unpublished order (2d Cir., March 21, 1972). Because of respondent's concession, we will decide here only the issue raised, of whether petitioner's employment in Brownsville and Nebraska City was temporary rather than indefinite or indeterminate.↩